UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN MARTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-00391-MJD-JMS |
| | ) |
| CHRISTOPHER NICHOLSON, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant's motion for summary judgment [Dkt. 98]. For the reasons set forth below, the motion is **DENIED**.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the properly supported facts asserted by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, a party who bears the burden of proof on a particular issue may not rest on his pleadings, but rather must show what evidence he has that demonstrates that there is a genuine issue of material fact that requires a trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). The non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required

to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001); *see also Burton v. Bd. of Regents of Univ. of Wisconsin Sys.*, 851 F.3d 690, 695 (7th Cir. 2017) ("'It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.'" (quoting *Liberles v. Cook Cty.*, 709 F.2d 1122, 1126 (7th Cir. 1983)).

## II. **FACTS OF RECORD**

The relevant facts of record, viewed in the light most favorable to Plaintiff Kevin Martin, as the non-moving party, are as follow.

Martin is an inmate at Wabash Valley Correctional Facility ("WVCF"). At all times relevant to this lawsuit, Martin was housed in segregation in the secured confinement unit ("SCU") of WVCF. Defendant Christopher Nicholson is a correctional lieutenant at WVCF who works in the SCU.

Martin was known at WVCF to file grievances and lawsuits. On July 23, 2019, Martin filed a lawsuit against Nicholson in the Sullivan Circuit Court. Nicholson was served with the complaint in that case on July 27, 2018.

On July 23, 2018, Martin received a report of conduct for threatening prison staff by stating "Wait until I get my hands on one of you punk ass bitches." [Dkt. 27-3.] On Friday July 27, 2018, Martin received a report of conduct for battery on staff after he assaulted Correctional Officer Lovelace with feces stored in a Styrofoam cup.

On Monday July 30, 2018, Nicholson sent an email to WVCF staff regarding Martin in which he noted that, due to Martin's recent assaults on staff, special security precautions were being put into effect. Specifically, as it related to Styrofoam cups, Nicholson noted that after

2

Martin finished a meal, he was to be "given the order to place the food tray and Styrofoam cup on the cuff port[1] and return to kneeling on his bunk" to allow a staff member to retrieve the tray. Thus, at the end of each meal, Martin was supposed to be required to return the Styrofoam cup that came with his meal.

On August 21, 2019, Martin's cell was searched at the direction of Nicholson. Cell searches are often referred to as "shakedowns." Searches are a necessary part of prison operations; they operate as an effective deterrent to the introduction, fabrication, storage, transportation, and use of contraband by inmates. Inmates and their property are subject to search at any time, something that Martin understood. Any correctional officer at WVCF can make the decision to search an inmate's cell, and searches can occur for many reasons, one of which is that the officer suspects the inmate has contraband. If a search is ordered because of suspicion of a particular type of contraband, the shakedown is limited to searching for that type of contraband. A standard cell shakedown lasts between fifteen and thirty minutes. Nicholson generally orders a cell shakedown once a week; they can occur as often as twice in a shift.

On August 28, 2018, Nicholson directed Correctional Officer Cole Banta to conduct another shakedown of Martin's cell. Nicholson told Banta that he had seen Styrofoam cups in Martin's cell and directed him to remove them and to look for "any other possible weapons that may be in his cell." [Dkt. 99-3 at 17.] Nicholson did not mention the lawsuit that Martin had filed against him, and Banta was not aware of that lawsuit at the time.

---

[1] A cuff port is the portal through which food trays are delivered to and retrieved from offenders in their cells in SCU.

Banta asked Correctional Officer Woodburn to assist him with the shakedown of Martin's cell, which they conducted the morning of August 28, 2018. During the shake down, which lasted approximately fourteen minutes, Banta observed three cups inside Martin's cell; two of them were in plain sight on the floor next to the cell door and the third was discovered during the search. None of them contained bodily waste. Although the stated purpose of the shakedown of Martin's cell was to look for cups, the search included places that a cup could not be hidden, such as in between the pages of books.

Martin was in the indoor recreational pad during the shakedown but could see the officers in his cell. Martin became upset that his cell was being searched and stated that he "wanted [officers] to bring him inside and he wanted to see how tough [they] were." [Dkt. 99-5 at 2.] Banta interpreted this statement as a threat and issued a conduct report for threatening. Although he had intended to confiscate the cups he saw in Martin's cell, "in [his] haste to write an accurate conduct report, [he] inadvertently failed" to do so. *Id.* The cups were therefore left in Martin's cell. No property was confiscated as a result of the shakedown.

Between August 28, 2018, and April 22, 2019, Martin filed twelve accepted grievances. The record does not indicate whether those grievances involved Nicholson. Martin also filed several lawsuits after August 28, 2019, including, of course, this case.

### III. DISCUSSION

Martin alleges that the August 28, 2018, shakedown of his cell was ordered by Nicholson in retaliation for his exercising his rights under the First Amendment by filing suit against Nicholson. To prevail on a First Amendment retaliation claim, Martin must show that (1) he engaged in protected activity; (2) he suffered a deprivation likely to deter future protected

activity; and (3) his protected activity was a motivating factor in Nicholson's decision to order the shakedown. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018).

With regard to the first prong, Nicholson does not dispute that Martin's filing of a lawsuit against him constituted constitutionally protected activity. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) ("Grievances addressed to a government agency are, if intelligible, nonfrivolous, and nonmalicious, petitions for the redress of grievances within the meaning of the First Amendment and are therefore prima facie protected by the amendment.").

Nicholson does dispute that Martin can satisfy the second prong, which requires Martin to show that the shakedown "would likely deter a person of 'ordinary firmness' from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878-79 (7th Cir. 2011) (non-prisoner First Amendment retaliation case applied to prisoner cases in *McKinley v. Schoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018)).[2] Nicholson argues that, because shakedowns are a "common and necessary party [sic] of prison life" and "occur frequently" at WVCF, [Dkt. 99 at 10-11], a shakedown is not a deterrent to engaging in protected activity. While Nicholson's argument may well carry the day with the jury, the Court cannot say as a matter of law that no

---

[2] Nicholson, citing *Holder v. Marberry,* 2011 WL 4729914, at 5* (S.D. Ind. Oct. 6, 2011), also argues that because Martin continued to file grievances and lawsuits after the August 28, 2018, shakedown he "was not deterred from engaging in future First Amendment activity" and "[a]s such, [his] claim against Defendant Nicholson fails and Defendant is entitled to summary judgment as a matter of law." [Dkt. 99 at 12.] However, as the Seventh Circuit made clear after *Holder* was decided, the standard is an objective one. *See Surita*, 665 F.3d at 878 ("We apply an objective test . . . ."); *McKinley*, 731 F. App'x at 515 ("But a retaliatory action need not *actually* deter the plaintiff from persisting with First Amendment activity; an objective test determines whether retaliatory actions would deter a person of 'ordinary firmness' from engaging in the protected activity.") (emphasis in original). Accordingly, whether Martin was actually deterred is irrelevant to Martin's prima facie case, although it would be relevant to the issue of damages.

5

reasonable jury could find to the contrary. Shakedowns may occur regularly, but it seems safe to assume that they are not welcomed by inmates, and thus a reasonable jury could determine that being subjected to a retaliatory shakedown would dissuade an inmate of "ordinary firmness" from engaging in protected activity in order to avoid being the target of such shakedowns.

Turning to the third prong, Martin must demonstrate that his lawsuit was a motivating factor in Nicholson's decision to order the August 28, 2018, shakedown. *See Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013). "[A] motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004). Martin argues that he can satisfy this burden by presenting evidence from which a reasonable jury could conclude that the reason given by Nicholson for ordering the shakedown was pretextual. The Court agrees.

The Supreme Court has explained the import of evidence of pretext to a retaliation claim in the context of employment law as follows:

> [I]n *St. Mary's Honor Center* . . . we held that the factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff. 509 U.S. [502, 511 (1993)]. The ultimate question is whether the employer intentionally discriminated, and proof that "the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct."[*Id.* at 524]. In other words, "[i]t is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." [*Id.* at 519].
>
> In reaching this conclusion, however, we reasoned that it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation. Specifically, we stated:
>
>> "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of

6

> the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination." [*Id.* at 511].
>
> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. See [*id.* at 517] ("[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination"). In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); see also *Wilson v. United States,* 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979). Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000); *see also McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 814 (7th Cir. 2017) ("Evidence that the employer has offered false reasons for its actions permits an inference of unlawful discrimination."). The Court finds this holding to be equally applicable to this non-employment case. Therefore, if a reasonable jury could find that the reason given by Nicholson for ordering the shakedown was pretextual, that same jury could—but would not be required to—also infer that the actual reason was retaliation for the lawsuit Martin had filed against Nicholson a few weeks earlier.

The question, then, is whether there is evidence in the record that would support a finding of pretext. "Simply put, pretext is a lie—'a phony reason for some action.'" *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 894 (7th Cir. 2016) (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). Martin points to the fact that the officers who conducted the shakedown found three Styrofoam cups but failed to remove them from his cell and argues that a reasonable jury could infer from that fact that the need to keep Martin from having cups in his

7

cell was not the real reason for the shakedown. Nicholson counters by pointing to his own testimony and that of Officer Banta:

> When turning to Defendant Nicholson's intent, and thus any accusation of retaliatory animus, Defendant Nicholson has consistently maintained that that the cell search was ordered because of concerns about the number of Styrofoam cups in Plaintiff's cell given his history of assault staff with bodily waste. [Dkt. 99-6, 99-9.] This is further supported by Officer Banta's sworn testimony. [Dkt. 99-3, Dkt. 99-5.] Officer Banta testified that Defendant Nicholson (1) never mentioned Plaintiff's lawsuits or grievances and (2) only noted concern about the Styrofoam cups seen in Plaintiff's cell. [Dkt. 99-3, 15:2-6; 16: 5-18; 19: 25; 20: 1-5.] Officer Banta further testified that he fully intended to confiscate the Styrofoam cups maintained in Plaintiff's cell but failed to do so as he became distracted by Plaintiff's combative behavior which resulted in a conduct report being issued. [Dkt. 99-5, ¶¶ 7, 13] But for Plaintiff's behavior, Officer Banta would have confiscated the Styrofoam cups. *Id.* at ¶ 13. The sworn testimony of Officer Banta is undisputed.

Dkt. 120 at 2-3. However, the Court agrees with Martin that the jury reasonably could conclude that the testimony of Nicholson and Banta is contradicted by the video of the shakedown, which shows the three cups in plain view of the two corrections officers when they finished the search and left the cell in an unhurried manner. Further, Officer Banta does not actually say in the cited declaration that he was "distracted" by Martin's "combative behavior"; rather, he states: "In my haste to write an accurate conduct report, I inadvertently failed to confiscate Martin's Styrofoam cups." [Dkt. 99-5 at 2.] However, the conduct report is quite short and uncomplicated; it is not full of the type of details that one might have difficulty remembering if they weren't recorded immediately. In addition, there were two officers performing the search; it is unclear why Officer Woodburn, who did not prepare or sign the conduct report, failed to pick up the cups— the very items that were the stated security risk that the search was designed to protect against. Finally, as noted by Martin and unrefuted by Nicholson, Officer Banta testified that if a search is ordered because of suspicion of a particular type of contraband, the shakedown is limited to

8

searching for that type of contraband, [Dkt. 99-3 at 13], but the video suggests that the search of Martin's cell was not limited to places in which a Styrofoam cup could be hidden.

A reasonable jury certainly could credit the testimony of Nicholson regarding the reason he ordered the search of Martin's cell. However, construing all of the facts of record in the light most favorable to Martin, the Court finds that a jury also reasonably could infer that Nicholson's stated reason was false and simply a pretext for unlawful retaliation. Summary judgment therefore must be, and is, denied.

## IV. **CONCLUSION**

For the reasons set forth above, Nicholson's motion for summary judgment [Dkt. 98] is **DENIED**. This matter remains set for a final pretrial conference on February 10, 2020, and a jury trial on March 9, 2020. Counsel are reminded of the pre-trial preparation deadlines set forth in section VIII of the case management plan in this case [Dkt. 52 at 5] and are directed to the Court's Trial Practice and Courtroom Procedures, which can be found at https://www.insd.uscourts.gov/sites/insd/files/Courtroom%20Procedures%20MJD.pdf and which should be reviewed well in advance of the final pretrial conference.

SO ORDERED.

Dated: 27 NOV 2019

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

KEVIN MARTIN
169789
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Robert E. Duff
INDIANA CONSUMER LAW GROUP
robert@robertdufflaw.com

Amanda Elizabeth Fiorini
INDIANA ATTORNEY GENERAL
Amanda.Fiorini@atg.in.gov

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Jordan Michael Stover
INDIANA ATTORNEY GENERAL
jordan.stover@atg.in.gov